UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STANDARD MORGAN PARTNERS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-4145 |
| | § | |
| UNION INSURANCE COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

ORDER

Pending before the court is a motion for reconsideration filed by plaintiff Standard Morgan Partners, Ltd., addressed to the court's order granting the motion for summary judgment filed by defendants Nationwide Insurance Company and Nationwide Mutual Fire Insurance Company (referred to jointly as "Nationwide"). Dkt. 53. After considering the motion, the response, the reply, the exhibits in support, and the applicable law, the motion to reconsider is GRANTED in that plaintiff's response to the motion for summary judgment is deemed to be timely filed, and the prior orders granting summary judgment and entering a final judgment are VACATED. The motion for summary judgment, now fully briefed, is again GRANTED for the reasons set forth below.

BACKGROUND

Standard Morgan Partners, Ltd. ("Standard Morgan"), filed an original petition in the 125th Judicial District Court of Harris County, Texas, on December 7, 2009, asserting that a building in which it held a deed of trust security interest was damaged during Hurricane Ike. Dkt. 1-4 ¶¶ 5-6. The property at issue was insured by "policies issued by Union [National Insurance Company ("Union")] and Nationwide." Id. ¶ 5. The case was removed to this court by Union on December 30, 2009, on the basis of diversity of citizenship. Union filed an amended answer and asserted a

crossclaim seeking "contribution, indemnity and/or reimbursement" from Nationwide in the nature of a "pro rata" recovery of monies Union paid to the owner of the property at issue.  Dkt. 22 at 8. Standard Morgan initially stated claims for breach of contract, unfair settlement practices, failure to promptly pay claims, breach of the duty of fair dealing, and violation of the Texas Deceptive Trade Practices Act against both insurers, but recently voluntarily dismissed all claims against Union.  Dkt. 45.  Union's cross-claims against Nationwide were also dismissed.  *Id*.  Ultimately, Union was dismissed from this case by agreement of the parties.  Dkt. 45.

The only claims left in this case are Standard Morgan's claims arising from the Nationwide policy ("Policy").  Nationwide sought summary judgment on those claims.  Dkt. 46.  When no response was filed, the court granted the motion, which it deemed to be unopposed.  Dkt. 51. Plaintiff seeks reconsideration of that order, and asks permission to file a response to the motion for summary judgment.  Dkt. 53.  Plaintiff has, in anticipation, filed its response to the motion for summary judgment.  Dkt. 58.  Nationwide, although opposing reconsideration of the court's prior order, has submitted a reply in support of its motion for summary judgment in the event the court grants reconsideration.  Dkt. 64.

## I.   Reconsideration.

Plaintiff moves for reconsideration of the court's order granting summary judgment on several bases, but the only one the court need address is its assertion that it was not properly served with the motion.  The parties agree that service of the motion was made electronically, and that counsel for plaintiff actually received a copy of the motion.  However, electronic service is permissible only when the person served has agreed to such service in writing.  FED.R.CIV.P. 5(b)(2)(E).  Plaintiff's counsel has not consented in writing to electronic service.  The only means by which electronic service would be authorized in this case would be Local Rule 5.1, which

provides that the "notice of electronic filing that is automatically generated by the Court's electronic fling system constitutes service of the document *on those registered as filing users of the system*." Local Rule 5.1 (emphasis added).  Plaintiff's counsel is not currently registered as a "filing user" with the court, and he is, therefore, not covered by the provision of Local Rule 5.1 that would otherwise permit electronic service.

It should also be noted that, in undertaking to represent a party in a case before this court, counsel is subject to the court's procedures, and specifically the court's Administrative Procedures for Electronic Filing in Civil and Criminal Cases dated January 1, 2007, which provides that "[a]ttorneys admitted to the bar of this Court, as well as those admitted pro hac vice, *are required to register as Filing Users of the Court's Electronic Filing System*." (emphasis added).  Therefore, although plaintiff's counsel is not without fault in the circumstances leading to this court ruling on Nationwide's motion without a response from the plaintiff, the failure to respond to the motion was clearly unintentional.  And, in any event, it is clear that the motion for summary judgment was not served as provided in Rule 5(b) and, accordingly, that the court's ruling on the motion without plaintiff's response should be vacated so that the motion may be addressed on its merits, with full participation by the plaintiff.

The motion to reconsider (Dkt. 53) is GRANTED.  The court's order granting summary judgment (Dkt. 51), and its order entering final judgment (Dkt. 52) are VACATED.

Both parties seek sanctions with respect to the motion for reconsideration.  The court does not believe sanctions are warranted, and the respective motions are DENIED.

Notwithstanding the court's decision to deny sanctions, plaintiff's counsel is ordered to bring himself into compliance with the applicable local rules by becoming a registered "filing user" of the Electronic Filing System FORTHWITH.

## II.     Motion for summary judgment.

As noted above, the parties have now both fully briefed Nationwide's motion for summary judgment.  The matter being reopened, and fully briefed, the court will proceed to the merits of that motion.

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir.2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact

4

warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

## A.  Insurable interest.

Nationwide claims that summary judgment is proper because Standard Morgan never possessed an insurable interest in the property.  Texas law in this respect was summarized in *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App. – Dallas 1993, no writ):

> A party must have an insurable interest in the insured property to recover under an insurance policy.  It is not necessary that the party own the property to have an insurable interest.  "[A]n insurable interest exists when the [insured] derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963); *St. Paul Fire & Marine Ins. Co. v. Daughtry*, 699 S.W.2d 321, 322-23 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.).  If a claimant cannot suffer any pecuniary loss or derive any benefit from the property, he has no insurable interest.  Accord *Reynolds v. Allstate Ins. Co.*, 629 F.2d 1111, 1114 (5th Cir. 1980) (applying Texas law, the Fifth Circuit

5

> reasoned that a mortgagor's insurable interest was not extinguished
> because the attempted foreclosure was void).

Further, the party seeking insurance coverage bears the burden of proving an insurable interest, and the existence or not of an insurable interest is a question of law. *Id.*

In its first amended complaint, Standard Morgan specifically alleged that it held "a deed of trust security interest" in the property at issue. Dkt. 16 at ¶ 6. Nationwide does not contest that a deed of trust security interest would qualify as an insurable interest under Texas law. Instead, Nationwide has attached to its motion the transcript of testimony from recent bankruptcy proceedings initiated by Gulf Freeway Plaza LLC ("Gulf Freeway") where Gilbert Ramirez, Sr., testified that Standard Morgan never possessed a deed of trust security interest in the property. Dkt. 48-4 at 17. Ramirez testified that the property at issue was owned by Gulf Freeway, and was sold to Lino Chun in January, 2008. *Id.* at 11. Gulf Freeway held a deed of trust security interest in the property at that point and, when Lino Chun defaulted in 2009, it was Gulf Freeway that foreclosed on the property in December, 2009. *Id.* at 12. Ramirez testified that the only relation Standard Morgan has to the property is that Standard Morgan owns Gulf Freeway. *Id.* at 13-14.

In response to Nationwide's motion, Standard Morgan has now presented an affidavit from Ramirez wherein he states that he is the "sole managing partner of Westhoff, LLC" which, in turn, is the general partner of Standard Morgan, a Texas limited partnership. Dkt. 59 ¶ 1. "Standard Morgan Partners is the parent to Gulf Freeway Plaza, LLC, a Texas limited liability company. Gulf Freeway is a 'wholly-owned subsidiary' of Standard Morgan." *Id.* Thus, Ramirez states that Gulf Freeway owned title to the property at the time it issued the wraparound deed to Lino Chun, and that Gulf Freeway purchased the property back after the damage from Hurricane Ike and Chun's

subsequent default. *Id.* at 2.  With respect to the existence of an insurable interest, Mr. Ramirez states:

> The revenue and liabilities from the Property ultimately flows [sic] to Standard Morgan Partners through Gulf Freeway Plaza, as Standard Morgan Partners is legally allowed to do.  Standard Morgan Partners then nets the revenues and losses together, which reduces Standard Morgan Partners' reported taxable income.  Consequently, Standard Morgan Partners, Ltd. has a direct interest in the Property because of the revenue it can receive from the Property and in the Property's on-going financial success of the Property's operations.

*Id.* at 3.

This asserted pecuniary interest in the property is, as Nationwide notes, in stark contrast to the allegations in the complaint, and in the amended complaint, that Standard Morgan "had a deed of trust security interest in real and personal property at 9920 Gulf Freeway, Houston, Texas 77064 ...."  Dkt. 1-4 ¶ 5; Dkt. 16 ¶ 6.  Nationwide also asserts that Ramirez's affidavit is at odds with testimony he gave during a deposition in this case.  Ramirez indicated early in his deposition that Standard Morgan "owned" Gulf Freeway.  Dkt. 48-9 at 8.  When asked about Standard Morgan's interest in the insured property, he testified as follows:

> Q.     What revenue or income did Standard Morgan Partners receive from this property, 9920 Gulf Freeway?
>
> A.     I don't know.
>
> Q.     As you sit here right now, are you aware of Standard Morgan Partners actually receiving any revenue or income directly itself from the 9920 property?
>
> A.     Re -- rephrase your question.
>
> Q.     Sure. As -- as you sit here right now, you know, as the principal person with Standard Morgan Partners and representing the company, are you aware of Standard Morgan Partners collecting any revenue or income relating to the 9920 property?

7

A.    No.

Dkt. 48-9 at 25-26.  Nationwide asserts that Mr. Ramirez has filed a "sham" affidavit that is at odds with his earlier testimony, and that the affidavit is, therefore, not admissible evidence of an insurable interest.

A sham affidavit is one that impeaches, without explanation, earlier sworn testimony, and is not competent evidence.  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).  The court does not believe that the affidavit presented by Mr. Ramirez necessarily conflicts with his earlier testimony.  Ramirez was asked during his deposition if he was aware of any revenue or income Standard Morgan received *directly* from the property, and he stated that he did not know.  When asked if he was aware of any revenue or income Standard Morgan *collected* relating to the property, he answered "No."  Dkt. 48-9 at 25-26.  In his recent affidavit, Ramirez does not suggest that Standard Morgan has *direct* income from the property, nor does he suggest that Standard Morgan collected revenue or income relating to the property.  Rather, and consistent with his deposition testimony that Gulf Freeway owned the property, and that Standard Morgan in turn owned Gulf Freeway, Ramirez states that Standard Morgan's interest in the property is *derivative* of Gulf Freeway's, and that Standard Morgan therefore had a pecuniary interest in the property.  Ramirez has, in the court's view, added details to his earlier testimony, but he has not expressly contradicted or impeached it.  The affidavit, coming from a person with knowledge of Standard Morgan's corporate structure and its ownership interest in Gulf Freeway, is competent evidence to support a finding that revenues from Gulf Freeway ultimately pass through to, and are realized by, Standard Morgan.

In *Thompson v. Trinity Universal Ins. Co.*, 708 S.W.2d 45 ( Tex. Civ. App.–Tyler 1986, writ ref'd n.r.e.), a building owned by a corporation was destroyed by fire.  The sole owner of the

8

corporation had obtained an insurance policy on the property in *her* name, and not on behalf of the corporation.  The court found an insurable interest because, as "sole owner of the corporation, obviously Thompson suffered a pecuniary loss from the destruction of the building and had an insurable interest in it."  *Id*. at 48.  Likewise, in *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524 (Tex. App.– Houston, 1991, writ den.), the court found that a corporate shareholder possessed a legally insurable interest in a building owned by the corporation, but that the insurable interest was necessarily limited to the extent of the shareholder's interest in the corporation.  The instant case is analogous to both *Thompson* and *Huang* in that Standard Morgan has an identifiable pecuniary interest in the insured property arising from its ownership of the entity that, in turn, owned the property.  Specifically, at the time the insurance policy was issued, the property was secured by a deed of trust to Standard Morgan's wholly-owned subsidiary, Gulf Freeway.  Standard Morgan's interest is of no less stature than the interests of the sole owner of the corporation in *Thompson* or the corporate shareholder in *Huang*, and since those interests are legally insurable under Texas law, so is Standard Morgan's, and the motion for summary judgment is DENIED in this respect.

### B.     Policy limitations.

Nationwide also seeks summary judgment premised upon the contractual limitation on Standard Morgan's recovery to its "financial interest in the Covered Property."  Dkt. 48-14 at 17. The court interprets Nationwide's argument in this respect as being based solely upon Nationwide's related argument that Standard Morgan lacks an insurable interest in the property.  Since Standard Morgan possesses such an interest, the motion for summary judgment is denied in this respect as well.

Nationwide next claims that summary judgment is appropriate on the basis of the "Other Insurance" provision in the policy it issued to Standard Morgan:

> Under any property coverage provided by this policy, if there is other insurance covering the same loss or damage, *we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.*

Dkt. 48-16 at 40 (emphasis added).  There is no dispute that Lino Chun also had insurance on the property with Union Insurance Company, and that payments were made for the damage to the property under the Union policy.  This issue was explored at length in Gulf Freeway's bankruptcy proceedings, and Ramirez testified that Gulf Freeway ultimately received all of the insurance payments made to Lino Chun under the Union policy.  Dkt. 48-5 at 40; Dkt. 48-6 at 1, 6-7.[1]

Plaintiff's first response to Nationwide's motion for summary judgment on the basis of the "other insurance" exclusion is that there is a factual dispute whether that provision is even part of the policy.  Dkt. 58 at 11.  The exclusion is in the "Conditions Form" part of the policy, which appears after the liability coverage portion of the policy.  Dkt. 48-16 at 40.  Standard Morgan argues, therefore, that it is not clear whether the exclusion applies.  Nationwide responds that the "Conditions Form" expressly states that "[a]ll coverages of this policy are subject to the following conditions."  *Id.* at 39.

"If the insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous.  If the policy is not ambiguous, then the court construes the policy as a matter of law."  *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, — S.W.3d —, 2009 WL 4856782, at *35 (Tex. App.—Houston [1st Dist.] Dec. 17, 2009, no pet. h.) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)) (internal citation omitted).  Here,

---

[1]        To the extent that the Ramirez affidavit purports to challenge whether Gulf Freeway actually received the Union payments from Chun, the affidavit is clearly at odds with Ramirez's testimony in bankruptcy court, and does not, therefore, constitute admissible evidence.

the policy unambiguously makes the "other insurance" exclusion applicable to all coverages available under the Nationwide policy.  Dkt. 48-16 at 39.  Therefore, Standard Morgan's argument is defeated by the plain language of the policy.

Standard Morgan also argues that no double payment can occur in this case because *it* never received payment under the Union policy–payment was instead issued to Lino Chun.  While it is technically true that Standard Morgan did not itself receive payments from either Union or Chun, Standard Morgan's interest in the property arises solely from its ownership interest in Gulf Freeway. The bankruptcy court granted Union Insurance Company's motion to dismiss on the basis that payments under the Union policy were issued to Lino Chun and were then signed over to Gulf Freeway.  Therefore, payment for damage to the property has been made to Gulf Freeway, and, through Gulf Freeway, to Standard Morgan.[2]  Again, this argument does not defeat Nationwide's claim that the other insurance exclusion bars recovery.

Finally, Standard Morgan has presented evidence that the payments by Union Insurance to Chun (and then to Gulf Freeway) covered only damage to the roof and the HVAC equipment of the property, but did not actually pay for the entire amount of the damage done to the property during Hurricane Ike.  Dkt. 59 ¶ 5.  Nationwide responds that the applicable exclusion limits Nationwide's responsibility to any amounts in excess of what was "due" from the other insurer, whether or not that amount could be, or was, actually collected.  In other words, the critical inquiry is not what the other insurance paid out, but what it ought to have paid out in light of the coverage provided.  Here,

---

[2]     And, of course, to the extent that Standard Morgan is attempting to draw a distinction between payments Gulf Freeway received, but Standard Morgan did not, this position directly contradicts Standard Morgan's assertion of an insurable interest which is premised solely on the fact that Gulf Freeway's profits and losses "pass through" to Standard Morgan.

plaintiff itself has presented as an exhibit Union Insurance Company's breakdown of its payments to Lino Chun under the Union policy, which "affords $3,500,000" in coverage "for all risk of direct physical loss to the property." Dkt. 59 at 47-49. Union Insurance Company then detailed its estimate of the total loss to the building in the amount of $170,479.96. *Id.* This is, in fact, the entire amount actually paid to Chun, and then forwarded to Gulf Freeway. Dkt. 48-5 at 40; Dkt. 48-6 at 1, 6-7. What the court must decide is whether the evidence presented by Standard Morgan of damage in excess of the amount actually paid by Union is evidence that raises a dispute of material fact or, as Nationwide asserts, whether the only material fact is whether payment for the entire loss to the building was "due" under that policy, regardless of the amount actually paid.

Under Texas law, "insurance contracts are subject to the same rules of construction as other contracts," and a court's "primary goal . . . is to give effect to the written expression of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998). "Terms that are not defined in a policy are given their generally accepted or commonly understood meaning." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). If an exclusionary provision of an insurance policy "is subject to two or more reasonable interpretations, it is ambiguous," and Texas courts "'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable . . . .'" *Balandran*, 972 S.W.2d at 741 (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Here, the exclusion applies when "other insurance" covers "the same loss or damage" that the Nationwide policy covers. Dkt. 48-16 at 40. The record in this case, and specifically the exhibits provided by Standard Morgan, establish that the Union Insurance policy provided $3.5 million in coverage for *all* physical damage done to the property. Dkt. 59 at 49. Thus, the exclusion applies in this case. Even where applicable, however, the exclusion does not categorically rule out the

possibility that Nationwide will be liable for part of the loss.  Rather, where other insurance covers the same loss, Nationwide will "pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not." *Id.*  Thus, the key inquiry is what was "due" under the Union policy.  In this respect, the record is clear that the Union policy covered all risk of physical loss to the property.  Therefore, what was "due" under the Union policy was payment for all such loss up to the $3.5 million policy limit.  Standard Morgan does not contest that the Union policy covered all loss to the property, nor does Standard Morgan present evidence contesting that payment for the entire loss to the property was due under the Union policy.  Rather, Standard Morgan has presented evidence that, accepted as true, would support a finding that Union *paid* less than the total amount of loss to the property.  The court agrees with Nationwide that the amount actually paid by Union is irrelevant to application of the exclusion where the evidence of what the Union policy covered, and therefore what was due under that coverage, is undisputed.

Again, the Union Insurance policy, according to Standard Morgan's own exhibit (and to the terms of that policy which is also an exhibit in this case (Dkts. 48-22, 48-23, 48-24, 48-25)), covered "all risk of direct physical loss" to the property in this case.  Nationwide has, therefore, presented uncontradicted evidence that payment for any and all loss to the property was *due* under the Union policy.  The express terms of the "other insurance" exclusion of the Nationwide policy issued to Standard Morgan make the actual amount *paid* under another policy irrelevant so long as full payment for the loss was *due* under that other insurance.  Put a different way, accepting Standard Morgan's evidence as true, it has established at most that Union's estimate of damage done to the property was wrong–Standard Morgan has not presented any evidence that the damages it seeks from Nationwide were not actually due under the Union policy.   Thus, as to the sole relevant inquiry, Standard Morgan has failed to raise a dispute of material fact.  The Union Insurance policy provided

full coverage for the same loss that is at issue in this case, and payment was due under that policy for the entire amount of loss to the property at issue.  Therefore, the "other insurance" exclusion applies, and Nationwide is entitled to summary judgment.[3]

## Conclusion

Upon consideration of the motions and all responsive pleadings, as well as the applicable law, the motion to reconsider is GRANTED in that plaintiff's response to the motion for summary judgment is deemed to be timely filed, and the prior orders granting summary judgment and entering a final judgment are VACATED.  However, the motion for summary judgment (Dkt. 46), now fully briefed, is GRANTED.

Signed at Houston, Texas on May 11, 2011.

_____
Gray H. Miller
United States District Judge

---

[3]     The court's ruling that Nationwide is entitled to summary judgment on the basis of a policy exclusion makes it unnecessary for the court to explore a very troubling aspect of this case. Nationwide asserts as an additional basis for summary judgment that the policy is void for fraud because Standard Morgan misrepresented its interest in the property when it applied for insurance. More specifically, Standard Morgan stated in its application for insurance that it owned the property when, in fact, Gulf Freeway owned the property.  Then, through prior counsel William Green, Standard Morgan filed the state court petition in this case, and after removal an amended complaint, alleging each time that Standard Morgan held a "deed of trust security interest" in the property when it was readily apparent that Gulf Freeway held that interest.  Standard Morgan's prior attorney then filed a bankruptcy proceeding on behalf of Gulf Freeway asserting that *Gulf Freeway* possessed the deed of trust security interest in the property, but he allowed the contrary pleadings in this case to stand uncorrected.  Further, both Gulf Freeway in the bankruptcy court, and Standard Morgan in this court, each sought relief for *all* damage done to the property.  The bankruptcy court was concerned about the implications of these actions on the integrity of the judicial system.  This court shares that concern, but need not reach the issue at this time since the court has concluded that Standard Morgan did have an insurable interest in the property.

14